and then we'll go to the next case United States v. Britt 227012. May it please the court. Good morning. Grant Smith with the Federal Public Defenders representing Diamond Levi Britt. There's two issues in this appeal and I'd like to start first with the jury instruction issue. As to the jury instruction, the error here is not that the district court rejected the imperfect self-defense instruction initially requested by Levi's defense counsel. That instruction was wrong and it should have been rejected. The error is that after the district court indicated that it was going to reject this ask the court to look to the applicable case law and instruct the jury in accordance with that case law. Did he tender a new instruction? I'm sorry I didn't hear. Did he tender a new instruction? No, he did not. He pointed the court to this court's decision in Toledo and and says please read this in fashion of proper imperfect self-defense instruction. The court refused. It said it did not find an imperfect self-defense instruction to be an important thing. Did the defense counsel other than referring to Toledo say that this imperfect self-defense is not a true defense to first degree murder? It would lead to a conviction for a lesser offense of involuntary manslaughter. Or let me ask a more general question. Did anybody say including the judge or defense counsel or the prosecutor imperfect self-defense is relating to a conviction for a lesser included offense at all? Well first I kind of want to attack that assumption that that's the way it works. I think first it is a defense on its own to first degree murder and second degree because it negates the malice element. Once that's brought forward then someone can also request a lesser included instruction for involuntary manslaughter. But if that's not requested, if the government doesn't request it, it is a complete defense to first and second degree murder. What you're suggesting is imperfect self-defense, as I understand it, would lead to a conviction for a lesser included offense. Now a judge doesn't, I don't think, has the prerogative to tell the defendant without a request from the defendant that I'm going to instruct on a lesser included offense. And so if the defendant is presenting an all or nothing strategy, which may be a very cogent strategy to the judge, acquit on first degree murder or convict on first degree murder. And if this defense is going to facilitate a conviction on a lesser included offense, it seems to me that the judge is, you're telling the judge, read Toledo, I'd like you to research the law, I'd like you to research the ramifications that will actually lead to a conviction on this particular lesser included offense of involuntary manslaughter. We're not going to tell you anything to inform you of the relationship between this instruction and involuntary manslaughter, but you should have figured that out. That seems awfully difficult of a burden to impose on a judge. Well, two responses to that. The first, I don't think that accurately captures how imperfect self-defense works when a defendant requests an instruction to present it as a defense. I mean, at that point, the government has to disprove imperfect self-defense beyond a reasonable doubt. The government can also request an instruction for involuntary manslaughter, but if it chooses not to, then it is a complete acquittal for the defendant if it doesn't carry its burden. Is there some responsibility by the district court to instruct the jury based on the evidence that was presented at trial? Getting back to generic general thoughts. I mean, I think there could even be a requirement that if this evidence was presented and there was no request whatsoever for an imperfect self-defense instruction, that a court would have a sua sponte duty, but that's not this case. This case is defense counsel made a specific objection, requested an imperfect self-defense instruction, district court refused, and that objection was then renewed later on at the end of the jury instruction conference. What is the evidence supporting imperfect self-defense? This guy chopped this other fellow up pretty good. You've got to have evidence in order to get an instruction even if it's properly tendered. Correct, and as you pointed out your honor in Toledo, the bar for these types of instructions is pretty low and determining whether there's... What was the evidence of imperfect self-defense in the record? What was that evidence? This court gives full credence to the testimony of the defendant. Levi testified that he feared Gary. He talks about the night in question. He says Gary comes in and he's yelling. Levi puts himself on the other side of the living room. He then goes into the bedroom to avoid Gary. Gary follows him in. Levi testifies that he tells Gary, I love you, I love you. They ask him why, and he says because I didn't think I was going to get out of the room. So that's sufficient evidence to warrant instruction. It gets a self-defense instruction, but how is that imperfect self-defense? Imperfect self-defense is the same as self-defense except for the... Well, you've got the self-defense instruction. It's the same to the point that imperfect self-defense, the fear doesn't even have to be reasonable. It just has to be sincere, and so this is a critical point because the government... Well, that gets to Judge Backerak's position that there should have been a request for a lesser-included offense someplace along the line. There could have been if the government had decided once this imperfect self-defense was presented, the government could have had requested involuntary manslaughter. Or so could the defendant. They could have too, but it could have been strategy on the government's parts to go... There's nothing that requires a defendant if they bring imperfect self-defense to also request a lesser-included instruction. I mean, once there's evidence to warrant this defense, the case law is clear that the defendant is entitled to it. That's exactly what the Supreme Court said in Matt. Well, the defendant's entitled to instruction on any theory of the defense supported by evidence. Right. And if the court looks at it and says, you've got self-defense, that's what you're really looking for, and nobody says anything. Seems to me that you've gotten everything you wanted. Well, as this court said in Toledo, when there's evidence to support self-defense instruction, it necessarily follows that there's also evidence to support an imperfect self-defense instruction. Because the government... I mean, the defendant just has to sow a reasonable doubt that they had a sincere fear. That's it. There's not the additional component that that fear has to be reasonable as self-defense requires. Can I just add one question? I think that along the lines of what you were alluding to in responding to Judge Kelly, you know, that in terms of the prosecution could have requested an instruction on a lesser-included offense, the judge actually did instruct on this hierarchy of murder and did include involuntary manslaughter. Right. So there was at least a reference in what the jury was told to of what constitutes murder. And so then if you don't speak up and the prosecutor doesn't speak up and the judge says, well, I'm going to instruct on imperfect self-defense, that's telling the jury that you can acquit on first-degree murder and the jury is going to have no information about what they do with that other instruction about involuntary manslaughter being one of the options available to it. So the jury would be, if I was a juror, I would be hopelessly confused. And I certainly would have no way of knowing that imperfect self-defense has anything to do with this other instruction involving the hierarchy of murder with my option being involuntary manslaughter. I'm a little confused. I don't think the judge gave the hierarchy of murder instruction that defense counsel proposed. I could be wrong on that, but my recollection is he said that was similarly confusing. The judge did give a voluntary manslaughter instruction. It was instructed on first-degree, second-degree, involuntary manslaughter. I mean, the error here, when this court's reviewing whether the jury was properly instructed, if there's evidence to show that Levi acted sincerely but unreasonably, it becomes the government's burden to prove beyond a reasonable doubt in order to fulfill the malice element of first- and second-degree murder that Levi did not act sincerely and unreasonably. The jury was never told that. That was essentially an element of the offense. Once there's sufficient evidence to support that instruction, that becomes an element of the offense the government has to prove beyond a reasonable doubt, that Levi did act out of a sincere fear of Gary. That doesn't exist anywhere in the jury instructions that were provided in this case, so the jury wouldn't have been properly guided as to what the issues were before it or what the applicable law was. I would like to turn just quickly to the harm in this case, and I think this court's recent opinion in Kahn guides the harmlessness analysis as to the jury instruction error. As the opinion points out, there is some uncertainty in the Tenth Circuit for constitutional harmlessness standard. There's two different modes, and the government, or two different methods of analysis, and the government here can't carry its burden to prove either of these. The first is the Nieder analysis, where the government has to show that the omitted element was either was uncontested and supported by overwhelming evidence. Levi's mens rea was contested at trial. Whether he acted with malice was central to his defense. He claimed he feared Gary, so the government can't carry its burden for the simple fact that this was a contested element. What do you say to someone who says that if you listen to that audio when he's in the back seat of the police car, both when the officer is in the car and then after he gets out, when he says, yeah, I wasn't scared of him, you know, anymore, you know, he makes all of these incredible admissions, and this is right after, you know, this, you know, incident, and what do you say to someone who says nobody can listen to that audio and think that there was any possibility that the he sincerely believed that he was in danger? Well, the first thing is I would say that's not the correct harmlessness analysis. I mean, as I said, it either has to fulfill the Nieder test or the Sullivan test, which is that, sorry, I lost my train of thought. The Sullivan test is that the jury would have necessarily been required to make this finding as to the omitted element. That doesn't exist here. There's no other element or jury instruction that the government can point to that subsumes this sincere but unreasonable omission. The second is when I listen to those, the first thing, and look at those recordings, the first thing that jumps out is that he's in a severe psychotic episode. He's acting totally unreasonably. He's, you know, this rapid rambling. He's discussing things that have no mooring in reality. He thinks he's going to get out. He's asking for a cigarette. He's hitting himself. He starts uncontrollably sobbing when the officer leaves the car. I just don't think it's reflective as to, you know, any basis in reality for what he feared on that night. Unless there's any additional questions, I would reserve the remainder of my time. May it please the court, I'm Linda Epperle. I represent the United States in this matter. Judge Bacharach has hit the nail on the head as far as any error in this case, whether we're talking harmless error, plain error on the instructions, or on the exclusion of evidence. The proof here, unlike many of the court's reported cases on self-defense, or excluding evidence of self-defense, the proof here was overwhelming. The self-defense case was so weak, and those tapes so strong, that there is... Well, if the self-defense evidence was weak, then shouldn't he have gotten the instruction for imperfect self-defense? No, Your Honor, because he did not make the showing that there was a belief that he was in danger. He presented in his testimony at trial, for the first time, a self-defense argument. And in order to get an answer to this court in Crane, that his belief may have been criminally negligent as to whether deadly force was necessary to prevent death or bodily harm. But he still had to have a reason. He still had to have a belief. Well, doesn't his testimony support that? I mean, he felt, as I understand his testimony, the two of them began this confrontation in the living room. He says he goes to his bedroom, a smaller room, to try to avoid the confrontation, and he's followed by Gary, and feels he's cornered. And he's pushed against a dresser, I believe. So isn't that evidence? That is evidence, but it is not in any way reliable evidence, given other contradictions within the defendant's own testimony. It just is not reasonable to expect that anyone... But isn't that a jury question? I mean, we can sit here and say, gee, that doesn't sound reasonable to me, but the jury wasn't asked to determine that reasonable question. Even if this court, Your Honor, even if this court were to look solely at what the defendant said, he concluded his recitation of the plot and the events by saying that he just slashed his father two times and then he left because finally he could. The evidence that the jury had heard, even if you believe or hear that statement, the evidence that jury had seen before that indicated there's no way that this man was only hit twice with this katana sword. He had injuries on his right arm and right thumb, his left arm, his leg, the front and back of his head, which one of the medical examiners had described as being filleted. I'm trying to avoid getting off into all of that gore, but there's just no way that that was caused with two strikes and there's no way a jury could have reasonably relied upon that to find that there was any belief, whether reasonable or not, that self-defense was part of the problem. The court also received evidence that this victim, while he may have been a bully and while he may have in the By the time this act happened, he was disabled, had been disabled for years. He hadn't worked in 10 years. He had end-stage liver disease, coronary artery disease, hypertensive cardiovascular disease, an enlarged heart and enlarged spleen. Well, he could walk into this room and push a guy who's pretty good-sized up against a dresser, right? Well, that was his testimony, but he could recall those little details specifically, other events immediately surrounding and after. But again, we're getting into the credibility question. That's true, Your Honor. That's true. But even with his testimony, there is no way that he only hit this man twice. Well, is that the question on our instruction issue? The question on the instruction issue is whether there was a belief that deadly force was necessary to prevent death or great bodily harm. There was nothing here showing that the victim was armed. The only thing he may have had was his size. And so his belief was unreasonable. His belief... And isn't that the instruction that he wanted? He... Well, it was a little difficult to tell exactly what instruction he wanted. As counsel admitted, the first submitted question was clearly erroneous, and the court didn't give it. What the defendant then did was ask the court to craft an instruction. The court did not feel that that was warranted in this case, but the court did give an instruction on regular self-defense, and that was very important. Crane is the best descriptor that this attorney has found on exactly what imperfect defense is supposed to mean, when it should be given, that it results, as the panel had indicated, if you find imperfect defense, that results in a involuntary manslaughter, and then we have the problems about whether the court should be imposing that. Well, wouldn't one naturally follow the other? If the court went down the road for imperfect self-defense, I'm sure you or whoever was prosecuting that day would say, okay, we've got more charges then, if we're going to talk about that. But again, the court determined that that instruction was not necessary. And given the proof here, what this court is ultimately going to come to is a look at whether there was harmless error. In other words, not giving this one instruction based on the defendant's testimony at trial, which contradicted these compelling oral tapes that the jury heard, and the evidence presented by others. This court would have to find that the lack of that instruction left this court in grave doubt as to whether it had an unfavorable influence on this trial. And that's if he raised enough in order to actually make a proper request for the instruction to begin with. That's just not possible under these facts. Under these facts, for the same reason, the evidence that was excluded, while the court may have said that they were finding it should be excluded for 404B reasons, the evidence that was requested was propensity evidence, which even under Armand Joe is prohibited. There were specific instances that did come in from the persons indicated in attachment B to the defendant's brief who described long ago incidents with women. Perhaps one of the most harmful of those was Aaron Haggard, who testified that when the defendant was four, he had to go to get police reports about the dad being physically abusive. And again, that's an example of how long ago that was. Third, the defendant did testify about specific instances, including saying that at one point his father had shot at him. He was able to testify that in this case he said he felt fearful, but again, didn't say that until he was on the stand. Well, isn't that what matters? I mean, it matters if it is believable. Here, it was not. There was no offer, no matter how remote in time, how these remote attacks on women showed that the defendant should have been fearful. Was there evidence of Gary's present reputation? Was he bad long ago, but now he's a great guy? Was there that kind of evidence? I wouldn't say there was testimony that he was a great guy. There was testimony, as I indicated a moment ago, about his physical disabilities that he might not have had 20 years ago. Was there evidence that he was a bully? That he had a reputation as being a bully? He generally had a reputation as a bully, and the jury heard that. The jury heard, I think, evidence that he was kind of hot-headed and maybe a little puffed up. But the jury also heard evidence that after years of not having much to do with his son, that he had made a genuine effort in recent years to get along with his son. That he had invited the son into their home to live for two and three months at a time until they started arguing enough that the son would go somewhere else. Then he would come back. But there was certainly evidence that our victim was attempting to make that a better relationship with his son. For all these reasons, Your Honor, we would argue that there is not any possibility that either one of these alleged errors would have swayed this jury. In this case, within 45 minutes, they reached a first-degree murder verdict. This is not a case where there was a mixed verdict or several hours that went by. And these small errors, if they were even errors, wouldn't have mattered in this case. We would ask the court to affirm. Can I ask you a question? Certainly. When we were talking about the instruction issue, one of the things that you said, I think, was that the judge had declined to give this imperfect self-defense instruction because there wasn't anything to support it. In other words, there wasn't sufficient evidence to justify the instruction. Am I right, at least, that that, not necessarily the exact words, but that was the reason that the judge gave for not giving the instruction? In all candor, part of the reason that the judge said he did not give the instruction was because the case law on imperfect self-defense, this court felt... Well, he said that too. Yes, he said he found it confusing. All right. So obviously, it's unlikely that we're going to agree that it's within the judge's discretion to say we're not going to abide by a published presidential opinion because you're confused by it. But putting that aside, it's the only other reason that the judge gave was that there wasn't sufficient evidence to support an imperfect self-defense instruction. The judge believed that there was not sufficient evidence. The judge believed that there was not a belief that there was self-defense, whether criminally negligent or otherwise. But the judge did give the regular self-defense instruction. The court also said that he was afraid, the court said, that giving that imperfect defense instruction because it confused him, the court was afraid it was going to confuse the jury. Yeah, by instructing the jury on our precedent. Well, the court was afraid that given the lack of proof here... All right, that's what I'm... I'm not trying to kid you. That's what I'm getting at. So the judge was saying two things. I'm confused by Toledo. I think the jury's going to be confused if I tell them about Toledo. And then he says that there's not sufficient evidence to support this. To take what Mr. Smith had said, however, whatever inferences one draws, would you agree that a reasonable juror could listen to that audio and say that this guy was in the middle of a psychotic breakdown or that he was not acting rationally? You would agree with that? I would agree that you could possibly make that argument. However, and while... I'm not asking if you can make the argument. Anybody can make whatever argument they want. I'm asking, is that a, you know, viewing the evidence of the life most favorable to the defendant, is that a reasonable inference that he was not acting rationally? He was not in a rational state of mind. If I start beating my head like he was in the police car, would you say, well, I think Judge Begerich, there's something going on with him? Well, if the defense had felt that, then they certainly should have raised a defense of insanity. A perfect self-defense. Or a perfect self-defense. We would argue that that's not. All right, I know you would. But the point is, or my question is, if, hypothetically, and I know you don't agree with this, but if we say a reasonable juror could have found that he was in an irrational state of mind, and in his psychotic state thought, as many people that are delusional do, that he was in actual fear of Gary, that's, and if we decide, you put harmlessness aside. If we decide that that's up to a jury, and we decide that you do not satisfy your burden of proof on harmlessness, we really don't have the prerogative to say, do we, that the judge should have given, was in his discretion to not give the instruction because it was an imperfect proffer, that the instruction was improper that was given to him. Because that's not the reason that the judge gave for not giving it. The judge didn't say, you didn't give me a proper instruction. The judge said, there's not evidence to support it, and I'm confused by Solito, right? So we don't, do you agree that we don't really have the discretion to say that we're going to affirm because it wasn't a properly proffered instruction? I see that I'm out of time. May I answer your question? I see a couple of things. First, Your Honor, while the defendant may have seemed irrational in that audio tape, he was not irrational in that he was bouncing off and not consistent in what he said. He was very consistent. He hated his dad. He wanted to kill him. You know, there was not anything there about I'm scared. In fact, he denied he was scared. All of that was consistent. It may have been obnoxious, and he may have been upset that he'd been caught, and he may have been under the influence of something. We don't know. But we do know that there was consistency with what he said and that that was consistent with the evidence that had come in. If you have someone who has a belief as to why there should be, if you have someone that has a belief that is unreasonable, but they are consistent in that belief, like, I'm trying to think of an example, but failing of someone that has an unreasonable psychotic type belief, then that person might be criminally negligent. Maybe. I would have problems assigning a criminal negligent tag to someone who is psychotic or mentally ill. To me, that's why we have not guilty by reason of insanity. Okay. Thank you very much. Thank you. Uh, does the defendant have? Oh, yeah. Just a couple things. First, you're right and wrong. You're right in that when the district court says, I'm not going to give this imperfect self-defense instruction, it's not because there wasn't an adequate proposal. He doesn't care at all. He has no problem with, you know, going and fashioning his own. His problem is he just says, I don't think it's important. The self-defense instruction is important. So you're wrong to the extent that he based it in a lack of evidence. He doesn't say that anywhere in the record, that there's insufficient evidence. I mean, I guess I really don't know what he's saying when he says, this just really isn't important. But as to the question whether there's sufficient evidence to warrant an instruction, I think it's really important that this court's case law makes clear that it gives full credence to the defendant's testimony. It doesn't conduct a credibility analysis. It doesn't question whether it's contradicted by some other evidence. It accepts at face value what the defendant said at trial to determine whether an instruction should be given. And there's more than enough evidence here based on Levi's testimony that he did sincerely fear Gary.  A jury could have reasonably believed that he sincerely feared Gary. It's whether a jury could have had doubt that the government failed to prove that he did not sincerely believe. So it's even a lower standard. So in this case, the error is that the district court refused to give instruction on a theory of defense when there was sufficient evidence to support that defense. And the harm, I think, is governed by con in that the government has failed to carry its burden to prove that this error was harmless. Thank you. Thank you. All right, this matter will be submitted. Very well presented by both sides. We appreciate.